Walter R. Hart, J.
An article 78 proceeding was heretofore instituted by this petitioner to review the determination of respondent which granted in part and denied in part its application for a rent increase pursuant to the “hardship” provision of subdivision 5 of section 33 of the State Rent and Eviction Regulations. The matter was remitted by this court to respondent for reconsideration as to certain items and the reallocation of the rents. Thereafter respondent reconsidered the application with respect to these specific items, conducted a hearing, re-examined petitioner’s application and records and arrived at a determination which in the main adhered to his original decision and granted petitioner further relief to a very limited extent. It is this later determination which petitioner seeks to review in the instant proceeding. An analysis of respondent’s *588 return and the proceedings before him with respect to the specific items heretofore remitted is as follows:
1. PLUMBING EXPENSES
With respect to this item, on the earlier proceeding- it was represented to the court that in 1956 petitioner corporation entered into a contract with Key Plumbing Company to do all necessary repairs on a flat basis of $200 a month; that in 1957 Key advised petitioner that upon a renewal of the contract the rate would be increased to $300 a month; that petitioner, rather than pay this increase, entered into an agreement whereby Jacob Breitman, managing agent and husband of the owner of 100% of the stock in petitioner corporation was to. do the work at the same rate theretofore paid to Key; that Breitman accordingly performed practically all of the plumbing work. It was also represented to the court that of 96 tenants occupying the premises, 89 had signed individual statements “ acknowledging that all plumbing repairs had been done by the landlord for 1957 and 1958 and up to date ”. Respondent in computing the plumbing expenses disallowed same insofar as they related to the claimed charges of Breitman on the ground that petitioner “ failed to furnish any information as to the work done, where it was done, nor any schedule of his basis of evaluation for the charge of labor allegedly performed by him.” The court in its opinion observed that in view of the express agreement between the parties and that practically all of the tenants, many of whom opposed the protest, conceded that all necessary plumbing work was done, that their signed statements had not been repudiated, nor a claim of fraud in the procurement thereof advanced, that the requirement that records be furnished as to the date and nature of the work was unreasonable. The court further observed that it appeared anomalous for the respondent to allow the charge for supplies and fixtures such as new stoves and sinks and disallowed the labor charge incident to the installation thereof.
After the remand there was presented to respondent a statement bearing the signatures of 55 tenants stating that the superintendent (not Breitman) was the only person who made the actual plumbing repairs in their apartments. Petitioner in reply, submitted affidavits of the superintendent, handyman and Breitman controverting this and requested a hearing which was afforded to petitioner. At the hearing about a dozen tenants appeared and testified that few and infrequent plumbing repairs were made and when performed that they were actually made by the superintendent and never by Breitman. Two *589 tenants, however, did testify that they each recalled only one occasion when Breitman himself made some repairs. Breitman on the other hand testified that while the superintendent was present on the occasion of the repairs that he and not the superintendent did the work. The respondent’s order and opinion, included in the return, contain the following findings: “When tenants were confronted by the landlord’s attorney with the individual slips, dated April 1959, bearing their respective signatures, they each stated they signed on Breitman’s request and statement that the Local Bent Administrator required it in connection with the then pending investigation into whether essential services were being maintained. They all emphatically reiterated that plumbing repairs were always physically made by the superintendent in their respective apartments and that any language indicating otherwise was untrue, misleading and inserted after they had signed. Jacob Breitman admitted that all the slips are in his handwriting. Excepting the time they were exhibited to the Accounting Section, said slips were always retained in Breitman’;s possession. An examination shows that Jacob Breitman’s name appears in some, but not all (2D, 3A, 3B, 4F, 4D, 5F) of said slips, usually following the words ‘ were done by the landlord ’ (which is a corporation); that the first stroke of his first name is sometimes in ink of a different color than the rest of the writing (6N, 2C) ; that there is a long blank space after the word 1 landlord ’ in one slip where Breitman is not named (2D); and that on some slips his name and dates are squeezed in after the word ‘ landlord ’ (2A, 2IC, 4M, 4P, 4B, 5D, 5K, 6F). It is noteworthy that in affidavits sworn to October 1 and 8, 1957, received at the Local Bent Office on October 2 and 8, 1957, in connection with an earlier proceeding (AO 29424), said Breitman does not state that various plumbing repairs then in progress were being made by himself.”
It is the conclusion of the respondent that since the superintendent, an employee of petitioner on a monthly salary made the repairs, there was no basis for an allowance to Breitman. Bespondent also determined that the books and records of petitioner rather than corroborating the claim of an express agreement between the corporation and Breitman to pay him $200 monthly, destroys the claim. The only evidence submitted in support of the claim is a group of cancelled checks, 24 in number, totaling $7,070.91. Breitman is named as payee in only 8 of them which total $1,825.16 and only one of these is in the sum of $200. The remaining checks are payable to the Manufacturers Trust Company or Evelyn Breitman, the expía *590 nation being that a Cadillac was purchased for Breitman in the name of Evelyn Breitman, his daughter-in-law, and that the total amount of the checks were payments applied to this purchase. However, none of these payments are charged in petitioner’s boohs to plumbing expense but are, in the main, charged to management or officers’ salaries, $949.16 to the subject premises and $6,121.75 to 140 Ocean Avenue, another building owned by the petitioner corporation. Moreover, Breitman admitted that he did not report any compensation for plumbing services for income tax purposes.
Respondent after the remand refused to allow the charges for plumbing repairs but did allow for the installation of new gas ranges and sinks which the tenants testified were connected by Breitman. There is more than ample warrant in the record for the determination by respondent who in the first instance is vested with the responsibility of determining the issue of credibility. It is his appraisal of the testimony before him that is controlling.
2. FEES FOB THE ADJUSTMENT OF FIBE LOSSES
On the prior proceeding it appeared that fees totaling $198.62 were paid to the son of the principal stockholder who is an insurance broker for the adjustment of fire losses; that checks were submitted as proof of the payment of the fees, together with affidavits showing the services rendered. The fees were disallowed by respondent since “ they were not substantiated ”, The court in remitting the matter stated that the proof consisting of the checks and affidavits were sufficient substantiation as a matter of law and that the items should have been allowed. No such allowance, however, was made after the remand. The respondent takes the position that since the petition in this proceeding failed to raise as an objection the disallowance of this item, the matter may not be here reviewed. To sustain his position respondent adverts to section 9 of the Emergency Housing Rent Control Law (L. 1946, ch. 274, as amd.) which requires that the petition in the article 78 proceeding specify the objections. There is no reason, however, why the petition in the interests of justice should not be amended by the court pursuant to section 105 of the Civil Practice Act which permits such amendment at any stage of a special proceeding. To sustain a contrary conclusion respondent cites the case of Matter of La Russo v. McGoldrick (283 App. Div. 720); Matter of De Rosa v. Weaver (3 A D 2d 729) and Matter of Gordon v. Abrams (145 N. Y. S. 2d 546, affd. 1 A D 2d 896). These authorities are not in point *591 since they hold that where a protest to the respondent failed to raise an objection, the question may not in the first instance be reviewed by the court.
The objection with respect to this item was raised through the protest and set forth in the petition in the first proceeding and respondent was fully apprised of petitioner’s position with respect thereto.
Another reason advanced by respondent for resisting this payment is that the broker who adjusted the loss is prohibited by section 129 of the Insurance Law from receiving compensation therefor. While illegality as a defense might be raised in an action by an unlicensed broker for his services against the petitioner it affords respondent no basis for the disallowance. Nor is there any validity to the contention that the payments represent management services since similar payments to other adjusters for other losses were approved. There is no valid basis to disallow the claim simply because the services were rendered by Mrs. Breitman’s son. The direction by this court to allow this item should not have been ignored by respondent. If not in accord with it he had an available remedy which should have been resorted to. Accordingly, respondent is directed to allow this item.
3. PAINTING
After remand respondent allowed the item of $70 for the painting of apartment 5K as directed by the court. With respect to the claim of $60 for painting the apartment of Arnold Gordon, petitioner presented as proof of payment an uncashed .check payable to the order of the tenant e/o The State Beni Commission. Petitioner was afforded an opportunity to explain why the check was never cashed. In this proceeding petitioner states that the reason why the check was not cashed was the fact that the petitioner waived back rent of $63 in payment of the painting bill. If this is so, it must be assumed that petitioner did not account for this item in the rents collected. It is therefore not entitled to receive credit for the painting charge.
4. ACCOUNTING SERVICES
With respect to the disallowance of accounting fees allegedly paid to Mrs. Breitman’s son, there was not in the first instance any substantiation of these payments. As directed by the court on the remand respondent was directed to determine the nature of the services, i.e., as to whether they were in fact accounting or of a management nature, for which there has been an allowance of 5% of the rent. Bespondent has determined that the *592 services rendered consisted of the maintenance of subsidiary schedules, paint schedules, rent registers, accounts receivable, and were, therefor, of a management nature. This determination is not arbitrary nor capricious.
With respect to the claim for services by an accounting firm it appears that the charge of $100 was for the income tax return of the corporation covering its operations not only of the subject premises but also another apartment house belonging to the petitioner. The charge for the public accountant’s services was not allocated on the books of the corporation between the two parcels. It is not the function of the respondent to do so. Accordingly, there was sufficient justification for the denial of this item.
5. LEGAL PEES
In the petition the landlord states with respect to the allowance for processing an earlier “ hardship ” proceeding: “ As to the 25% allowance, the commission is not allowing 25% since it always divides this by three years, thus allowing only 8%% or one months increase, which is arbitrary.” While this court in the earlier proceeding held that respondent lacked statutory authority to limit the fees paid in good faith by a landlord seeking an increase under the regulation, it was not intended to hold that respondent lacked the authority to allocate one third to the test year and the remaining portion to the two successive calendar years as provided for in its regulations.
The court concludes, however, that the $500 paid to the attorney to resist successfully an action for overcharges (which with treble damages was in excess of $10,000) was a proper charge and should have been allowed. While $3,000 was claimed in the protest, it appears that in fact only $500 was paid. As heretofore pointed out, if the tenants were successful in their action, the deficit in the rent for the test year would have been greater and the tenants would be called upon to pay a greater increase therefor so as to yield the landlord a 6% return. There is no merit to the argument that this item of $500 should be disallowed because it is a nonrecurring expense; the same argument could be advanced for the disallowance of attorneys’ fees for successfully prosecuting a “hardship” proceeding. There is no rational basis for the distinction.
Accordingly, the matter is remitted to respondent to adjust the rents with respect to the two items as herein indicated, together with the item classified by respondent as de minimis.